IN THE UNITED STATES DISTRICT COURT  FILED
FOR THE NORTHERN DISTRICT OF ALABAMA MAR 26  AM 8: 29
NORTHEASTERN DIVISION
U.S. DISTRICT COURT
N.D. OF ALABAMA

CHARLOTTE NAIL and          )
MILLARD NAIL, JR.           )
                            )
            Plaintiffs      )
                            )
    vs.                     )      CASE NO.  CV99-HGD-0568-NE
                            )
JRH RISK SERVICES, INC., et al.,   )
                            )
            Defendants      )


ENTERED

**MEMORANDUM OPINION**    MAR 2 6 2001

This case is before the undersigned Magistrate Judge based upon the consent of the

parties in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  This case was filed initially

in Cullman County Circuit Court but was removed to federal court by defendant, JRH Risk

Services, Inc. (JRH) because the dispute is governed by the Employee Retirement Security Act

of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*  Defendants, JRH and Cavalier Homes, Inc. of

Alabama,[1] have filed a Motion for Summary Judgment [Doc. #24].   The motion was

accompanied by a Memorandum of Law [Doc. #30] and evidentiary submissions in support of

the motion [Doc. #29].  Plaintiffs have filed a Response to Defendants' Motion for Summary

Judgment [Doc. #25].  Plaintiffs filed the affidavit of Millard Nail, Jr., in support of their response

---

[1] Defendant Cavalier Homes, Inc. of Alabama was added by amendment after removal.

[Doc. #25]. They previously filed their Rule 26 disclosures with the court which also contain certain documents considered by the court in resolving defendants' motion. [Doc. #17]. The issue of exhaustion of administrative remedies was discussed by plaintiffs in a brief submitted prior to defendants' motion [Doc. #21].

Plaintiff, Millard Nail, alleges that he held an insurance policy through his employer, Cavalier Homes, that provided health insurance coverage for himself and his family. Claims under that policy are administered by JRH as the third-party administrator of the health plan. Plaintiff claims that he paid all premiums due under the policy. According to the Nails, Millard's wife, Charlotte Nail, became ill in 1996 and underwent medical treatment and hospitalization for which coverage was due under the policy. They claim that JRH has wrongfully refused to pay for this treatment and hospitalization.

JRH denies that it has breached any duty to the Nails. It asserts two defenses. First, it asserts that the Nails failed to exhaust their administrative remedies under the policy and that, under the terms of the policy, exhaustion is necessary before a lawsuit can be instituted. Second, JRH asserts that its refusal to pay any benefits for Mrs. Nail's treatment and hospitalization is justified because, under the terms of the policy, except for a one-time payment of $500.00, there is no coverage for the first twelve months the policy is in effect for the treatment of conditions existing prior to the time the policy went into effect. JRH alleges that it has refused payment on the claims submitted on behalf of Charlotte Nail because she was being treated for the same condition in the months immediately preceding the effective date of the insurance policy. Hence, it asserts that no payments for her medical and hospitalization

2

bills are due under the policy because the condition treated was a pre-existing condition not covered under the terms of the policy.

**DISCUSSION**

**Exhaustion**

Plaintiffs claim that JRH does not possess the authority at law to determine "who can proceed to court on what claim." The Claims Review Procedure for the Cavalier Homes Health Benefit Plan submitted by plaintiffs, in pertinent part, states as follows:

> In cases where a claim for benefits payment is denied in whole or in part, the Plan Participant may appeal the denial. This appeal provision will allow the Plan Participant to:
>
> > (a)   Request from the Plan Administrator a review of any claim for benefits. Such request must include: the name of the Employee, his or her Social Security number, the name of the patient and the Group Identification Number, if any.
> >
> > (b)   File the request for review in writing, stating in clear and concise terms the reason or reasons for this disagreement with the handling of the claim.
>
> The request for review must be directed to the Plan Administrator or Claims Processor within 60 days after the claim payment date or the date of the notification of denial of benefits.
>
> A review of the denial will be made by the Plan Administrator and the Plan Administrator will provide the Plan Participant with a written response within 60 days of the date the Plan Administrator receives the Plan Participant's written request for review and if not notified, the Plan Participant may deem the claim denied. If, because of extenuating circumstances, the Plan Administrator is unable to complete the review procedure in 60 days, the Plan

3

> Administrator shall notify the Plan Participant of the delay within the 60 day period and shall provide a final written response to the request for review within 120 days of the date the Plan Administrator received the Plan Participant's written request for review.
>
> The Plan Administrator's written response to the Plan Participant shall cite the specific Plan provision(s) upon which the denial is based.
>
> ***A Plan Participant must exhaust the claims appeal procedure before filing a suit for benefits.***

[Doc. #17, Plan Document and Summary Plan for Employee Health Benefit Plan at 44] (emphasis added). This Plan is dated March 27, 1998.

The Claims Review Procedure which JRH asserts was in effect in 1996, in pertinent part, states as follows:

> If a claim is not paid in full, the Plan Supervisor will furnish notice to the claimant which will specify the reason or describe any additional information required to perfect the claim. Upon written request by the claimant within sixty (60) days after notice is received, the Plan Administrator will review the claim in question and give a final written decision on the review within sixty (60) days or one hundred twenty (120) days under special circumstances, after such request is received.

[Doc. #29 at Doc. 16; Affidavit of Jane McBrayer at ¶13.] Although plaintiffs make certain arguments based on the wording of the Plan dated March 27, 1998, the documents submitted by JRH and identified as the Plan as it existed in 1996 appear to be the relevant ones. However, both Plans require that a claimant make a written request for review of unpaid claims within sixty (60) days of receiving notice that the claim has been denied.

4

The Nails assert that they made seven post-denial attempts to receive payments on their bills. Defendants have submitted the affidavits of Jane McBrayer, manager of the JRH medical claims department, and David Hopper, the employee of Cavalier Homes responsible for the employee benefits program. They assert that there is no record which reflects that plaintiffs submitted an appeal of the denial of benefits by JRH either to JRH or Cavalier Homes. [Doc. #29, Affidavit of Jane McBrayer and Affidavit of David Hopper]. The records submitted by JRH do, however, reflect that Charlotte Nail's physician's office called JRH on January 10, 1996, concerning whether there was coverage under the Nails' policy for some treatment for which Charlotte Nail was scheduled. The physician's office was informed that JRH would not pay for the treatment because it was for a pre-existing condition [Doc. #29 at Doc. 7]. These records also reflect that Millard Nail was told the same thing on January 11, 1996 [*Id.* at Doc. 8].

Plaintiffs have submitted the affidavit of plaintiff Millard Nail [Doc. #25]. In that document, Nail admits that he received notice from JRH that his claims would not be paid. Nail states in his affidavit that, after being notified that these bills would not be paid by JRH, he contacted JRH and a person in the Human Resources department at Cavalier Homes. In attempts to get these bills paid, he asserts that he submitted additional information and filled out additional forms. However, after doing this, he was notified that his claims were again denied.

5

There is no record that the Nails ever requested a review after receiving notice of these denials of coverage and they do not claim to have done so.[2] Based on the evidence submitted, the court can reach no other conclusion than that plaintiffs failed to appeal the denial of the medical benefits sought for Charlotte Nail, thus failing to exhaust their administrative remedies under the policy.

Plaintiffs cite the language of the Claims Review Procedure for the argument that the review procedure is not obligatory. This language states that, where a claim is denied, "the Plan Participant *may* appeal the denial." (emphasis added). However, this language merely reflects that a plan participant may appeal a denial but does not have to do so. In addition, the language that follows shortly thereafter sets out the consequences for failing to appeal. It states that a plan participant *"must* exhaust the claims appeal procedure before filing a suit for benefits."  Therefore, assuming the language cited by plaintiffs is from the relevant Plan, their argument that appeal is not necessary is without merit. *See Bateman v. Blue Cross-Blue Shield*, 579 F.Supp. 265, 268 (M.D.Ala. 1984).

Interestingly, plaintiffs cite the 1998 Plan language in making their argument. The 1996 Plan referenced by defendants does not state that a claimant "may" appeal a denial of benefits, nor does it have any language that states that a claimant "must" exhaust his claims through the administrative appeals process before a suit can be filed. The 1996 language simply states that,

---

[2] Records submitted by JRH reflect that on February 2, 1996, JRH refused to pay for treatment received by Charlotte Nail on January 11, 1996, claiming the treatment was for a non-covered pre-existing condition. On January 31, 1997, JRH denied payment for medical treatments and services rendered to Charlotte Nail on January 11, 17 and 30, 1996, and March 21 and 30, 1996, claiming these services and treatments were rendered for non-covered pre-existing conditions.

upon written request filed within sixty (60) days of denial of benefits, the Plan Administrator will

review the claim and give a final decision within sixty (60) or one hundred twenty (120) days.

Thus, the language in the Plan cited by JRH as the one in effect in 1996 does not explicitly

require exhaustion of administrative remedies prior to the institution of a lawsuit. This would

appear to be language more favorable to plaintiffs' claim that they do not have to exhaust their

administrative remedies. However, for reasons unknown to the undersigned, plaintiffs refer to

the 1998 Plan as the one containing the controlling language concerning appeals of the denial

of benefits. Nevertheless, the Court believes, for reasons set out below, that plaintiffs are

required to exhaust the Plan administrative review process before filing suit regardless of

whether the Plan explicitly requires it. Therefore, the determination of which Plan applies is

immaterial to the Court's decision. Both require that a request for review of a denial of benefits

be made in writing within 60 days of the date of denial, and the evidence reflects this never was

done.

The Eleventh Circuit Court of Appeals has consistently held that "plaintiffs in ERISA

actions must exhaust available administrative remedies before suing in federal court." *Counts*

*v. American General Life & Accident Ins. Co.*, 111 F.3d 105, 109 (11th Cir. 1997) (citing *Springer*

*v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990); *Mason v.*

*Continental Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir. 1985)). This exhaustion

requirement "applies both to actions to enforce a statutory right under ERISA and to actions

brought to recover benefits under a plan." *Counts*, 111 F.3d at 109 (citing *Springer*, 908 F.2d

at 899; *Mason*, 763 F.2d at 1225-27.) The policy concerns served by the exhaustion

requirement include "helping to reduce the number of frivolous lawsuits under ERISA; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Curry v. Contract Fab. Inc. Profit Sharing Plan,* 891 F.2d 842 (11th Cir. 1990) (citing *Amato v. Bernard*, 618 F.2d 559, 567-68 (9th Cir. 1980)).

Despite this exhaustion requirement, however, district courts are given the discretion to excuse the requirement "when resort to administrative remedies would be futile or the remedy inadequate." *Counts*, 111 F.3d at 108 (citing *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990). Here, the Nails argue that pursuit of their administrative remedies would have been futile because the review procedure is not calculated to grant a claimant any meaningful review of a denial. To substantiate this claim, they must make the "'clear and positive' showing of futility . . . required" before the court may suspend the exhaustion requirement. *Springer*, 908 F.2d at 901 (quoting *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989)); *see also McGraw v. Prudential Insurance Company of America*, 137 F.3d 1253 (10th Cir. 1998) (noting that futility exception is limited to those instances where resort to administrative remedies would be "clearly useless"). Plaintiffs have not made a "clear and positive" showing of futility. The Nails have submitted no evidence that pursuit of the review procedure would have been futile. The record is clear that the Nails' own delinquency in pursuing an internal appeal prevented the possibility of an administrative look at the merits, and the record contains nothing to suggest that the administrators would have reached a preconceived result in reviewing their claim. See *Springer*, 908 F.2d at 901 (noting that a claimant's disagreement with the basis of a decision does not excuse failure to exhaust).

8

Although necessarily a case-specific inquiry, futility may be established by showing the prevention of an administrative look at the merits, *Diaz v. United Agric. Employee Welfare Benefit Plan & Trust,* 50 F.3d 1478, 1486 (9th Cir. 1995), the denial of meaningful access to administrative review procedures, *Curry*, 891 F.2d at 846-47, or other arbitrary, capricious or aggravating circumstances.  Plaintiffs do not allege nor does the record disclose any such factors.

Therefore, based on the reasoning set out above, the Court concludes that defendants' motion for summary judgment is due to be granted based upon plaintiffs' failure to exhaust their administrative remedies.

**Pre-existing Condition**

JRH asserts that its refusal to pay any benefits for Charlotte Nail's treatment and hospitalization is justified because, under the terms of the policy, except for a one-time payment of $500.00, there is no coverage for the first twelve months the policy is in effect for the treatment of conditions existing prior to the time the policy went into effect.  There is no dispute that the policy in question limited coverage in this manner.

Although Millard Nail began working for Cavalier Homes in October 1992 and established insurance coverage under the Cavalier health plan, documents submitted by JRH reflect that the Nails' health insurance coverage was terminated on September 29, 1995, for non-payment of premiums [Doc. #29 at Doc. 1A].  Plaintiffs do not dispute this fact.

9

On December 4, 1995, Millard Nail submitted an application to re-establish his health

insurance coverage, which became effective January 1, 1996 [*Id.* at Doc. 5]. According to JRH,

the policy in effect in 1996 contained the following restriction on coverage:

### PRE-EXISTING CONDITIONS

> A pre-existing condition is an injury or sickness that was diagnosed
> or treated within three (3) consecutive months immediately
> preceding the date coverage began.
>
> The benefits payable for treatment of a pre-existing condition are
> limited to $500.00 until 12 months after Major Medical coverage
> begins.
>
> These provisions apply only to employees and dependents who
> became covered after the Effective Date of this Plan for the
> medical benefits only.  Benefits for the Express Scripts Drug Card
> program will not be subject to these limitations.

[Doc. #29 at Doc. 6].[3]

Records submitted by the parties reflect that Charlotte Nail was treated for abdominal

and epigastric pain, vomiting and diarrhea on October 26 and November 17, 1995, by Dr. B.

Gregory Bostick.  On November 17, 1995, Dr. Bostick referred Mrs. Nail to Dr. J. W. Evans for

further treatment.  On November 20, 1995, she was examined by Dr. Evans.  At that time, Dr.

Evans determined that she should be scheduled to undergo an upper gastrointestinal endoscopy.

However, the medical records reflect that Mrs. Nail chose not to have this treatment at that

---

[3] The Plan Summary submitted by plaintiffs defined a pre-existing condition as one for which medical advice, diagnosis, care or treatment was recommended or received within *six* months of enrollment.  However, as noted elsewhere, this Plan Summary is dated March 27, 1998, and the court assumes that this definition was changed to reflect the six-month time frame subsequent to 1996.  This difference is immaterial because the diagnoses and treatments that form the basis for JRH's rejection of plaintiffs' claims all fell within the three-month period.  *Compare* Doc. #17 (Plan Document and Summary Plan for Employee Health Benefit Plan at 27) *with* Doc. #29 at Doc. 6 .

time.  According to the notes of Dr. Evans dated February 12, 1996: "We note that we had planned the upper GI for last November, however the patient elected to postpone those procedures until January when they were performed."  [Doc. #29 at Doc. 3].

On February 28, 1996, Mrs. Nail again was examined by Dr. Bostick, complaining that she was again suffering, *inter alia,* from diarrhea, which was alternating with constipation [*Id.* at Doc. 13].  He saw her again on March 5, 1996.  Once again she complained of diarrhea and was diagnosed with epigastric tenderness.  On this occasion, Dr. Bostick referred Mrs. Nail to Dr. Charles Dasher, a gastroenterologist [*Id.*].  Dr. Dasher subsequently hospitalized Mrs. Nail for a few days for treatment of these problems.  Dr. Dasher advised Dr. Bostick that he suspected that her problem was "a superimposed gastroenteritis on longstanding functional bowel disease."

The review of these records clearly indicates that the treatment received by Mrs. Nail in 1996 related back to and are the same symptoms for which she was treated in October and November 1995.  This is highlighted by the fact that Dr. Evans notes that he wanted to perform an upper GI endoscopy on Mrs. Nail in November 1995, but she elected to wait to have it done in January 1996.  Therefore, the conditions for which Mrs. Nail was treated in 1996 were pre-existing conditions as defined in the Plan.  Accordingly, JRH's motion for summary judgment also is due to be granted based on the pre-existing condition exclusion contained in the Cavalier health plan.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this _____ day of March, 2001.


HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

12